IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN D. DORFMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 09-6158 |

REPORT AND RECOMMENDATION

JACOB P. HART				DATE:   June 7, 2010
UNITED STATES MAGISTRATE JUDGE

Jonathan D. Dorfman brought this action under 42 U.S.C. 405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI").  He has filed a Request for Review to which the Commissioner has responded.  For the reasons that follow, I recommend that the matter be remanded to obtain an RFC assessment by Dorfman's treating mental health professionals.

I.	Factual and Procedural Background

Dorfman was born on November 23, 1988.  Record at 83.  He graduated from high school.  At the time of his hearing, he had just completed his first year of college at St. Joseph's University, although he had been placed on disciplinary probation during the year because of loud outbursts.  Record at 24-25, 29-30, 341.  He had never worked.  Record at 93.

Dorfman filed a petition for SSI benefits on April 3, 2007.  Record at 83.  He claimed disability on the basis of Asperger's Syndrome, ADHD, tactile defensiveness, oppositional behavior, OCD, intermittent explosive disorder, dysthymic disorder, insulin resistance and hypothyroidism.  Record at 93.  Originally, he claimed an onset date of November 23, 1988, his birth date.  Record at 88.  At the hearing, however, the onset date was amended to the date of his April 3, 2007, application.  Record at 22.

Dorfman's claim was denied on October 23, 2007. Record at 68. He then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 75. The hearing was held on May 6, 2008. Record at 19. However, on May 23, 2008, the ALJ denied benefits. Record at 7. The Appeals Council denied Dorfman's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Dorfman subsequently filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do

not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III. The ALJ's Decision, and Dorfman's Request for Review

In his decision, the ALJ found that Dorfman suffered from the severe impairments of Asperger's Syndrome, dysthymic disorder, intermittent explosive disorder, and obsessive-compulsive disorder. Record at 12. He decided, however, that none of Dorfman's impairments, and no combination of them, met or medically equaled a listed impairment. Record at 13.

The ALJ did not fully credit the testimony provided by Dorfman, and by his father, who also appeared at the hearing. Record at 16. He found that Dorfman retained the RFC to engage in work at any exertional level, but with a need for only simple, routine tasks "secondary to a moderate (limited but still able to function satisfactorily) limitation in concentration, persistence and pace", and not more than occasional contact with supervisors and fellow employees, and no contact with the public. Record at 15.

In Dorfman's Request for Review, he maintains that (a) the RFC assessment reached by the ALJ is erroneous; (b) the ALJ erred in rejecting the opinion of the agency consulting psychologist; and (b) the ALJ's credibility assessment is not supported by substantial evidence.

3

IV.     Discussion

I can discuss Dorfman's issues all together, since they are interrelated. A thorough review of the ALJ's RFC findings must include consideration of the consulting psychologist's evidence, and the Dorfmans' testimony in the context of the rest of the file.

As noted above, the ALJ concluded that Dorfman had the RFC to perform work at any exertional level, but with a need for only simple and routine tasks, not more than occasional contact with supervisors fellow employees and no contact with the public. Dorfman argues that this assessment was inadequate in that it failed to address his low tolerance for frustration, and his inappropriate anger outbursts.

The fact that Dorfman has a low tolerance for frustration and inappropriate anger outbursts is thoroughly documented. Undoubtedly, the ALJ intended to accommodate what he called Dorfman's "moderate limitations in mental functioning" by limiting the amount of his contact with supervisors and others. Record at 17. The question is whether the record supports the ALJ's conclusion that these limitations are "moderate", or whether the evidence shows that they are marked or extreme, in which case they would be work-preclusive, according to the vocational expert who testified at the hearing. Record at 63.

Joseph S. Puleo, Jr., Ph.D., an independent consulting psychologist, met with Dorfman on July 19, 2007, after he graduated from high school but before his matriculation at St. Joseph's University. Record at 293. He found him to be alert, calm, and mild-mannered. Record at 294. However, Dr. Puleo noted his history of therapy and special education since the age of 3, including extensive treatment for his emotional/behavioral problems. Id. Dr. Puleo reported sadness, fearfulness, and a tendency to obsessive thinking and compulsive-ritualistic behavior.

Id. Also, Dorfman described himself as not always having full control over his emotions, and displaying impulsive reactions to frustration. Id.

Dr. Puleo diagnosed Dorfman with Asperger's Disorder, Dysthymic Disorder, Intermittent Explosive Disorder and Obsessive-Compulsive Disorder. Record at 295. He concluded that Dorfman had extreme limitations in his ability to respond appropriately to work pressures and to respond appropriately to changes in a work setting. Id. He also found that Dorfman had marked limitations in his ability to carry out detailed instructions; make judgments on simple work-related decisions; and interact appropriately with co-workers. Id. In almost every other area, including "social-interpersonal functioning", Dr. Puleo found moderate limitations. Id. Thus, Dorfman's limitations, as described by Dr. Puleo, are work-preclusive.

There does not appear to be any medical evidence directly contradicting Puleo's findings. The record contains a Psychiatric Review Technique form completed on July 30, 2007, by a "W. Flock." Record at 300. He or she found only a few moderate limitations. Id. However, this form was not relied upon by the ALJ. In any event, it is of little use. "W. Flock" may not be a medical professional, since no professional designation accompanies his or her signature. Record at 302. Further, the report is deeply contradictory: W. Flock reports that Dorfman "cannot adapt to change, cannot maintain persistence and pace." Id. By definition, this controverts the finding of only moderate limitations.

The hearing testimony from Dorfman and his father support the existence of marked or extreme limitations. Dorfman described his behavior as recently improved, but still problematic:

Q. Are there still any physical confrontations between you and your father?

A. Not so much physical anymore as much as they are verbal.

5

| | | |
|---|---|---|
| Q. | What do you mean not so much physical? | |
| A. | Occasionally, there will be times when I hit him but nothing like back then. | |
| Q. | What do you mean? | |
| A. | Like a, punching him, putting him in a head lock. | |
| Q. | Why would you punch your father or ... put him in a head lock? | |
| A. | Just like he interrupts a lot and, and, his jokes really make me angry. | |

Record at 46.

Dorfman also discussed the incidents which put him on disciplinary probation. In the first incident, Dorfman realized he had feeling for his friend's girlfriend and he "took it out on him", which meant glaring at the friend and then yelling at him when he tried to find the reason for the glaring. Record at 40. In the second incident, he started yelling at a female friend, and made a "very bad comment" which the friend interpreted as a threat. Id. Dorfman also stormed out of the disciplinary session when he was placed on probation. Record at 40-41.

Further, Dorfman described significant problems with self care, including showering only monthly because he has "other things he likes to do with his time." Record 43. Dorfman also described having a "huge pile" of dirty laundry in his room, and failing to brush his teeth for months at a time. Record at 41-42, 44.

Dorfman's father, Jeffrey Dorfman, gave a fuller picture of his son's past behavior. He confirmed that his son has hit him or put him in a headlock many times. Record at 49. He has hit his father while he is driving, and once grabbed the steering wheel. Record at 57. He has also hit his mother. Record at 51.

According to his father, Dorfman has broken two computers at home, by smashing, kicking and throwing them:

> He ... can't break out of it on his own, he gets frustrated and locked into an obsession with whatever it is that bothers him. Like, if the internet is not working or the school site is down, he could easily go into a, I call it a temper tantrum, I don't know what else it would be called. Holler, scream, curse, bang something, kick something, he's kicked the dogs, he's kicked boxes that had glassware in them, that type of thing.

Record at 55. Within the last year, Dorfman pulled the Christmas tree over onto the floor. Record at 60. He also swung his heavy book bag into his father's car. Id.

Further, Jeffrey Dorfman confirmed that the time between his son's showers is measured in months, "and I'm not talking one or two, I'm talking three, four, five." Record at 52.

As noted, the ALJ did not fully credit the testimony of Dorfman or his father. He also specifically rejected Dr. Puleo's findings of extreme and marked limitations. He wrote:

> As for the opinion evidence, the undersigned rejects Dr. Puleo's assessment of "marked" and "extreme" limitations in areas pertaining to concentration, persistence and pace and social interaction. These degrees of limitation are inconsistent with the claimant's capacity to attend college classes, excel in academics and be a member of two social clubs. Additionally, evidence shows the claimant to be pleasant, affable, cooperative, calm and mild-mannered when compliant with his medication regimen.

Record at 16.

This description of the evidence seems unduly reductive. Although Dorfman was not compliant with his medication at the time he screamed at and threatened his college friends, he has been medicated since his childhood, and it is unlikely that he was unmedicated every time he hit one of his parents or "hollered, screamed, and cursed." Further, failure to remain continuously medicated appears to be a self-care issue related to Dorfman's conditions. He

7

testified that he sometimes forgets to take a dose or two of medicine, and then he "gets irrational" and decides that the medicine doesn't really help, and that he doesn't need it, after which he "spirals downward." Record at 42.

Instead, the evidence suggests that Dorfman is affable and mild-mannered at times when he is not provoked into anger. His father said that he was frequently a "fantastic, great kid." Record at 58. He also testified that he was surprised when Dorfman stormed out of the disciplinary session, since he was usually "very quiet and mindful during something like this." Record at 56.

Indeed, Dorfman was able to complete college classes, and did increase his socializing by joining a computer gaming club, and an anime club (confusingly described in the transcript as an "Anna Mae" club). This suggests that with sufficient support he is capable of success. However, Dorfman's socializing is far from perfect; his behavior toward his new friends landed him on probation during his first college semester.

Dorfman is also benefitting from psychological counseling at college. Record at 341. Clearly, he would not have the same level of support at a job, where even one incident of property destruction, or one outburst of yelling and threats would surely lead to dismissal, even if no one was put in a headlock.

Dorfman has been received mental health treatment for years at the Northwest Treatment Centers. Treatment notes from Dorfman's treating therapist, dated between April 26, 2004 and March 20, 2008, are somewhat ambiguous, however. They reflect that, as of March 20, 2008, Dorfman continued to work on his poor impulse control, disproportionate anger, and failure to consider consequences before acting. Record at 340. Nevertheless, one therapy session a week,

8

plus periodic medicine checks, adds up to a fairly modest treatment regimen. Moreover, if Dorfman's hygiene is as poor as he and his father testified, it is surprising that self-care goals are not addressed. Surprisingly, the file does not contain an RFC report from Dorfman's therapist or his psychiatrist. As treating professionals, their opinions would be entitled to more weight than would that of Dr. Puleo, who only met with Dorfman once. 42 U.S.C. § 416.927(d).

Thus, while the record does not fully support the ALJ's RFC assessment, it is impossible to say with certainty that Dorfman is entitled to benefits, given his academic achievements and moderate mental health treatment. For this reason, I recommend that the matter be remanded for the taking of additional evidence in the form of an RFC assessment or other appropriate questionnaire completed by Dorfman's treating mental health professionals at the Northeast Treatment Centers.

In accordance with the above discussion, I make the following

### **R E C O M M E N D A T I O N**

AND NOW, this 7th day of June, 2010, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED IN PART and DENIED IN PART and the matter remanded to obtain an RFC assessment by Dorfman's treating mental health professionals.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN D. DORFMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 09-6158 |

O R D E R

EDMUND V. LUDWIG, J.

    AND NOW, this    day of    , 2010, upon consideration of the Plaintiff's Request for Review and the Defendant's response thereto, and after careful review of the Report and Recommendation of United States Magistrate Jacob P. Hart, IT IS ORDERED that:

    1. The Claimant's Request for Review is GRANTED IN PART and DENIED IN PART; and

    2. The matter shall be remanded to obtain an RFC assessment by Dorfman's treating mental health professionals.

                                BY THE COURT:

                                _____
                                EDMUND V. LUDWIG, J.